### BRICKILL et al. v. MAYOR, ETC., OF CITY OF NEW YORK

(Circuit Court, S. D. New York.   December 5, 1899.)

PATENTS — CONSTRUCTION OF CLAIMS — FEED-WATER HEATERS FOR FIRE-ENGINES.

In view of prior adjudications, the combination claimed in the Brickill patent, No. 81,132, for an improvement in feed-water heaters for steam fire-engines, must be held as not including, as one of its elements, the tank shown, which is used for preserving the heating-apparatus from injury when the engine is absent and disconnected; and the patent may be infringed by an apparatus in which a different device is substituted to perform the function of such tank.

### On Exceptions to Master's Report.

The patent in controversy, No. 81,132, was granted to William A. Brickill August 18, 1868, for an "improvement in feed-water heaters for steam fire-engines."   The object of the invention was to provide a steam fire-engine at all times with hot water heated to very nearly the boiling point so that steam may be rapidly generated when the engine is called into action.

The cause was tried at the October term, 1879, by Judge Wheeler, and the decision was filed July 2, 1880.   18 Blatchf. 273, 7 Fed. 479.   The opinion says: "The claim is for 'the combination, with a steam fire-engine, of a heating-apparatus, constructed substantially as described, for the purposes fully set forth.'   There were, before Brickill's invention, contrivances for heating water in coils of pipe, connected by tubes with the boiler of a steam fire-engine, so the water would circulate through the boiler and aid in preparing the engine for immediate use, sometimes detachable when the engine was wanted, and sometimes going with the engine; but none of them were very effective.   Those not detachable could not be effectively heated at all, and if those which were detachable were heated sufficiently to keep the water in the boiler hot when the engine was there, the heat, not having the water to counteract it, would injure the apparatus when the engine was gone. * * * The

98 F.—8

claim is for the combination of a heating-apparatus constructed substantially as described, and the construction described is of what was new with Brickill." The judge found that the patentee's discovery involved the inventive faculty to a considerable degree and was of great utility. He also found that infringement to some extent was clearly proved, if not admitted by the answer, and he did not attempt to construe the claim with reference to the alleged infringing devices now before the court.

The patent was also considered by Judge Shipman on demurrer to the complaint in an action at law. Brickill v. City of Hartford (C. C.) 49 Fed. 372. The portions of the opinion applicable to the present controversy are as follows: "The heater is connected with the boiler of the engine by two detachable tubes, one of which receives the cold water and conveys it to the coil of the heater, and the other receives and conducts the water, when heated, from the heater to the boiler; 'thus establishing and maintaining a free circulation between the heater and the boiler.' * * * There are not three members of the combination—the heater, the tank and the engine. There are only two members,—the heating-apparatus, of which the tank is a part, and the engine. The tank is particularly described as a part of the heating-apparatus, and is to be used in the absence of the fire-engine, and is not to be used when and so long as the engine is again in the house. It is included in, and is pointed out with sufficient distinctness as a part of, that apparatus. Whether the omission of the tank and the use of the rest of the apparatus would constitute infringement is a question which does not arise on this demurrer. * * * The fourth ground of demurrer is that the patent is void, because it appears on its face to claim only an unpatentable aggregation of a steam fire-engine and of a heating-apparatus. If the claim should be construed to consist of a combination of three distinct elements, heater, tank and engine, the defect upon the face of the patent, which is pointed out in the demurrer, would exist, because there is no joint and co-operative action between such three separate elements. The service of the tank was only called into requisition during the absence of the engine, and ceases upon its return. The joint action of the heater and tank did not and could not affect the action of the boiler. The situation would be similar to that which, in view of the supreme court, existed in Beecher Mfg. Co. v. Atwater Mfg. Co., 114 U. S. 523, 5 Sup. Ct. 1007, 22 L. Ed. 232. But construing the claim to be a combination of the heating-apparatus, of which the tank is merely a part, and steam engine, the device does not in my opinion exist because there is a joint and co-operative action between the heating-apparatus and boiler, and the action of each influences and affects the action of the other."

The case subsequently came before Judge Townsend upon demurrer to pleas (57 Fed. 216) but no question bearing directly upon the construction of the claim was involved. The opinion, however, expresses full concurrence with the reasoning of Judge Shipman in overruling the demurrer, supra.

The patent was also considered on demurrer by Judge Morris in Brickill v. City of Baltimore (C. C.) 50 Fed. 274. The opinion says, "The only question then, is whether the claim is uncertain as to the elements of the combination. In his specification the patentee states that he is 'well aware that the form of the heater used as well as of supplying water after the engine has been detached therefrom may be varied without changing the nature of my invention, which, as already set forth, consists in connecting to or combining with a steam fire-engine a heating-apparatus, so that water heated to nearly the boiling point may be supplied to the boiler of the engine, that the steam may be more rapidly generated, and consequently I do not wish to be understood as intending to claim any particular arrangement of heating-apparatus herein shown.' Reading the claim in connection with this explicit statement in the specification, I can perceive no uncertainty in the claim. It expresses to my mind that there are but two elements in the combination,—one a steam fire-engine and the other a heating-apparatus, constructed substantially as described."

The case came on for trial before Judge Morris and a jury and a copy of what purports to be his charge was read on the argument in this case and has been submitted to the court with the briefs. A portion of the charge is as follows: "As I construe his patent, Brickill does not claim as part of his

invention the tank which was to prevent the overheating of the water receptacle in the heater during the absence of the engine. That was a mere supplementary device for a particular purpose for which any other device, accomplishing the same result of preventing the overheating of the water receptacle in the heater, might be substituted without touching the invention which he claimed as new."

The following instructions were given by the court at the request of the defendants: "The court instructs the jury that the Brickill patent, as construed by the court, is broadly for a circulating heater connected with detachable connections with a boiler of a steam engine." "The tank, D, cocks, G and G2, wrenches, H, and that portion of the pipes, C and C, leading from the pipes. E, to the tank, D, which appears in the drawings and descriptive part of the Brickill patent sued on in this action, form no part of the invention set out in the claim of said patent, and should not be considered by the jury in deciding on the question of novelty or patentable invention of said patent, but merely as exhibiting what the patentee suggests as a convenient and practicable mode of putting his combination into successful use."

The jury found a verdict for nominal damages and the judgment entered thereon was reviewed and affirmed by the circuit court of appeals for the Fourth circuit. 8 C. C. A. 500, 60 Fed. 98.

The master reached the conclusion that Brickill's was a pioneer invention and, therefore, that the patent was entitled to a broad and liberal construction. He says in his opinion: "I therefore find the primary object of the invention was to keep the water in the boiler of the steam fire-engine very nearly at the boiling point, or above. The question as to how the heating-apparatus was to be preserved in the absence of the engine was secondary, and in no sense the primary object of the invention. It is quite material in my opinion whether the patented device was kept serviceable by the additional tank, the substitution of running cold water or the attachment of pipes running to the roof for the purpose of permitting the excess of steam and hot water to escape. The patent is for 'the combination with a steam fire-engine of a heating-apparatus constructed substantially as described for the purposes fully set forth.' The tank is not an element of the patented combination. It performs no function with reference to the heating of the water in the steam fire-engine boiler. It is but a device to maintain the heating-apparatus intact when the fire-engine is detached and until the heating-apparatus is again desired for use, and therefore could be dispensed with as a tank at will, provided any other means known at the date of the patent to be capable of performing such an office should be substituted. Any device embodying the self-preservative feature which, in combination with the steam fire-engine, accomplishes the heating of the water in the boiler of a steam fire-engine by means of the circulation of hot water or steam, would, under the decision of Judge Shipman, be an infringement of this patent. As I have already stated, I do not consider the tank any portion of the combination of heater and the fire-engine boiler. It follows that stationary boilers fitted so as to heat a steam fire-engine boiler by means of circulating hot water and steam were and are infringements of the complainant's patent."

The master filed his report, dated May 17, 1899, and this cause came on to be heard at the October term, 1899, on exceptions filed by the defendants. For the convenience of counsel it was agreed that a preliminary question, presented by exceptions Nos. 21 to 28 inclusive, involving a construction of the claim should first be heard, leaving the remaining exceptions to be considered hereafter. The question presented is of paramount importance and it was thought that it should be determined before the other exceptions were considered.

James A. Hudson and Raphael J. Moses, for complainants.
John R. Bennett, for defendants.

COXE, District Judge (after stating the facts as above). The question to be decided may be briefly stated as follows: Is the water tank, D, shown in the drawing and described in the specifica-

tion, an essential feature of the claim? If so, the apparatus used in connection with engines Nos. 8, 11, 24, 30 and 32 did not infringe, for no tank was employed. It is necessary to consider at the outset how far the court is permitted to go in construing the claim. To what extent is the question an open one? If it has been decided by this court in the present action it is, of course, res judicata; if decided by another court of co-ordinate jurisdiction, comity, as well as a decent and orderly administration of equity jurisprudence, requires that the decision should be followed, unless it can be shown that it was made upon an entirely different state of facts. It must be admitted, on all hands, that the question was not decided in the original case. The record is not before the court, but it is manifest that the subject of infringement received but scant attention from court and counsel. If not practically admitted, infringement was proved sufficiently to warrant an interlocutory decree. There was, therefore, no occasion for a careful construction of the claim. The defendants sought to escape by proving either that the patent was anticipated, or void for want of patentability, and the controversy was conducted along these lines. That the relation of tank, D, to the combination was not directly determined is obvious from an inspection of the opinion, and, it is thought that the proposition that it was determined indirectly or inferentially cannot be maintained in view of the fact that the language of which it is sought to predicate such a conclusion was used with no thought of the present controversy. If the opinion had interpreted the claim to include the tank as an essential element this court would be controlled thereby. The opinion does not do this, and if the record be appealed to nothing is there found to justify the inference that the judge intended so to construe the claim. Indeed, as often happens in patent litigation, the position of the parties seems to be completely reversed since the trial. Then the defendants were contending for a broad construction in order to prove lack of novelty; now they are asking for a narrow construction in order to escape infringement. The complainants, on the other hand, were seeking to limit their claim to the structure described in order to escape anticipation and now they seek to broaden it so as to include devices not originally before the court. This legal necromancy may not be entirely consistent, but it so often occurs in the course of patent litigation that the court, if it cannot decorate the practice with the seal of commendation, must, at least, recognize it as familiar and venerable. In any view it is entirely plain that the decision does not deal with the question now under consideration. The Hartford Case makes a distinct contribution toward the proper interpretation of the claim. It is authority for the proposition that there are only two members of the combination—the heater and the engine—and that the tank is not a member. The vital question whether the use of the apparatus, minus the tank, would constitute infringement is, however, left undecided. The Baltimore Case, when the same was considered on demurrer, decides nothing more than the Hartford Case, namely, "that there are but two elements in the combination—one a steam fire-engine and the other a

heating-apparatus." When, however, the cause came on for trial it was necessary to construe the claim and the exact question now in dispute was decided. It would be difficult to conceive of language more explicit and distinct than that used by the court. There can be no doubt that the subject was presented in several different aspects and as often decided in favor of the broad construction. Thus the court said, the patent "is broadly for a circulating heater connected with detachable connections with a boiler of a steam engine." "The tank, D, * * * forms no part of the invention set out in the claim." And again, "Brickill does not claim as part of his invention the tank which was to prevent the overheating of the water receptacle in the heater during the absence of the engine. That was a mere supplementary device for a particular purpose for which any other device accomplishing the same result * * * might be substituted without touching the invention which he claimed as new."

It is argued for the defendants that the question now presented was not involved in the Baltimore Case, and that the charge of the court is, therefore, not authority here. This proposition is based upon the fact that one of the rulings that the tank is no part of the invention was made in response to the defendants' request to charge. On the other hand, it is asserted in the complainants' brief that one of the devices in the Baltimore Case was the exact counterpart of the apparatus which the master here finds to be an infringement and which dispenses with the tank and substitutes therefor a connection with the city water. It is not possible from the meager record of the Baltimore Case which is before the court to reach a perfectly accurate conclusion regarding all the issues involved and the manner of their presentation to the court and jury. It is, however, not necessary that this should be done. It is beyond all doubt that in a bona fide suit upon the patent the court in the body of its charge found it necessary to construe the claim and did construe it to cover a combination of which the tank is no part. This is enough, and the rule thus laid down is a guide which neither the master nor this court should ignore. Were the question an open one much might be said on both sides, but such a discussion at the present time would only tend still further to complicate the situation. The entire case, including the original decree, can be reviewed on appeal unhampered by considerations which constrain this court, and, in any aspect, it would seem unwise to send the case back to the master with the consequent delay and expense when the rights of all parties, so far as this question is concerned, can be fully protected upon the record in its present form. The exceptions in controversy are overruled.